**ORIGINAL**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 8 2013

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| BRENDA K. MICHLITSCH, <br> PLAINTIFF, | § <br> § <br> § |
| VS. | §    CIVIL ACTION NO. 4:12-CV-0416-A <br> § |
| CAROLYN COLVIN, <br> ACTING COMMISSIONER OF SOCIAL <br> SECURITY, DEFENDANT. | § <br> § <br> § |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Brenda K. Michlitsch ("Michlitsch") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").

Michlitsch filed for DIB and SSI in September 2007, alleging that her disability began on March 1, 2007. (Tr. 16, 70, 153-60.) Her application was denied initially and on reconsideration. (Tr. 80-87, 90-95.) The ALJ held a hearing on November 12, 2008 and issued a decision on February 25, 2009 that Michlitsch was not disabled. (Tr. 16, 28-47, 70-76.) In an

order dated May 6, 2010, the Appeals Council vacated the ALJ's decision and remanded the case for further development. (Tr. 16, 78-79.) Specifically, the Appeals Council ordered the ALJ to: (1) apply the criteria of *Stone v. Heckler*, 752 F.2d [1099] (5th Cir. 1985); (2) consider the effects of Michlitsch's obesity; and (3) give further consideration to Michlitsch's maximum residual functional capacity ("RFC"). (Tr. 78-79.)

The ALJ held a second hearing on September 13, 2010. (Tr. 16, 48-62.) At that hearing, Michlitsch amended her alleged onset date to May 11, 2008, the date she suffered a fall and injured her back. (Tr. 17; 53.) Following the hearing, the ALJ, on October 25, 2010, issued another unfavorable opinion. (Tr. 13-22.) On April 20, 2012, the Appeals Council denied Michlitsch's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-3.) Michlitsch subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (DIB); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

2

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).

Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types

3

of work. *Id.* §§ 404.1520(e), 416.920(e). At steps one through four, the burden of proof rests upon the claimant to show that she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## I.   ISSUES

The sole issue Michlitsch raises on appeal is whether the ALJ properly considered all functional limitations resulting from Michlitsch's physical impairments in the ALJ's assessment of Michlitsch's physical RFC. (Plaintiff's Brief ("Pl.'s Br.") at 1.)

## II.   ALJ DECISION

In his October 25, 2010 decision, the ALJ concluded that Michlitsch was not disabled within the meaning of the SSA. (Tr. 16, 22.) In making his determination, the ALJ proceeded to

4

follow the five-step sequential disability evaluation process. At Step One, the ALJ found that

Michlitsch had not engaged in any substantial gainful activity since May 11, 2008, the amended

onset date of Michlitsch's alleged disability. (Tr. 17, 21.) At Step Two, the ALJ found that

Michlitsch suffered from "severe degenerative disc disease and is status post remote mitral valve

replacement with evidence of mild heart enlargement; the claimant has non-severe obesity and

diabetes mellitus." (Tr. 21; *see* Tr. 17.) At Step Three, the ALJ found that Michlitsch did not

have an impairment or combination of impairments that met or equaled an impairment in the

Listing. (Tr. 21.) Before proceeding to Step Four, the ALJ found that Michlitsch had "the

residual functional capacity for light work limited by the need to sit or stand, at her option, while

in the performance of job duties." (Tr. 20; *see* Tr. 21.) Next, at Step Four, the ALJ found that,

based on claimant's RFC, Michlitsch could not return to her past relevant work. (Tr. 20-21.)

Finally, at Step Five, the ALJ opined that Michlitsch retained the ability to perform a significant

number of jobs that existed in the national economy; thus she was not disabled and had not been

disabled at any time through the date of the decision. (Tr. 20-21.)

## III. DISCUSSION

### A.     Consideration of All Functional Limitations

In her brief, Michlitsch argues that the ALJ failed to consider all her functional

limitations when assessing her RFC and when determining, at Step Five, that she could perform

other work that exists in significant numbers in the national economy. (Pl.'s Br. at 7-11.)

Specifically, Michlitsch argues:

> [T]he ALJ did not consider the Plaintiff's chronic cardiac palpitations[1] and the
> effect of her medication, on her ability to perform work-related activities. The
> Plaintiff testified that she experiences fatigue; she complained to her doctor that

---

[1] Palpitation is defined as "a subjective sensation of an unduly rapid or irregular heart beat." *Dorland's Illustrated Medical Dictionary* 1386 (31st ed. 2007).

she is fatigued; her cardiologist acknowledged that he had to increase her medication to achieve better control over her palpitations, even though this may increase her level of fatigue. However, the ALJ never considered the effect of fatigue in determining the Plaintiff's ability to perform the jobs upon which he relied.

. . . .

The Plaintiff respectfully submits that the ALJ failed to consider the Plaintiff's ability to sustain work-related activity on a regular and continuing basis. Thus, his determination that the Plaintiff can perform light work with a sit or stand option is not supported by the record.

Further, the ALJ did not consider the effects of the Plaintiff's medication upon her ability to sustain work activity. The Commissioner has been advised by the Courts that he must consider the impact of medication side effects in considering disability. . . .

. . . .

State agency physicians considered the evidence and determined that Plaintiff should avoid even moderate exposure to hazards. Such limitation may result from the anticoagulant medication which Plaintiff has taken for years and continues to take. The ALJ, however, never considered such limitation, nor did he determine its significance with regard to the alternative occupations upon which he relied.

As the ALJ failed to consider the side effects of the Plaintiff's medication and the limitations caused by these side effects, he has not fully evaluated the Plaintiff's ability to perform work-related functions. Thus, the ALJ's residual functional capacity assessment is incomplete and his determination at step 5 that the Plaintiff can perform other work is not supported by substantial evidence.

(Pl.'s Br. 9-11 (internal citations omitted) (footnote added).)

RFC is what an individual can still do despite her limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id. See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A

---

[2] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. *Id.*; *see also Bassett v. Astrue*, No. 4:09-CV-142-A, 2010 WL 2891149, at *13 (N.D. Tex. June 25, 2010). RFC is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find supported by the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988).

In this case, as stated earlier, the ALJ determined that Michlitsch had the physical RFC to perform light work limited by the need to sit or stand, at her option, while in the performance of job duties.[3] (Tr. 20, 21.) In making this determination, the ALJ considered, *inter alia*, the

---

[3] Pursuant to the regulations, light work is defined as follows:

following: (1) Michlitsch's claim when she filed for disability that she had heart problems and was "*exhausted all the time*" (Tr. 17 (emphasis added); *see also* Tr. 187); (2) medical records showing that Michlitsch had undergone a mitral valve replacement in March 2001 after experiencing severe symptomatic mitral regurgitation (Tr. 18, 309-47); (3) medical records dated April 2001 in which R. Dale Anderson, M.D. ("Dr. Anderson") reported that Michlitsch has gradually been increasing her activities although she still had "*irregular heart rhythm* consistent with atrial fibrillation, for which she was prescribed a low-dosage beta blocker" (Tr. 18 (emphasis added); *see also* Tr. 388); (4) evidence that in June 2001 Michlitsch was back at work, working 10 hour days "although she would become somewhat *fatigued*" (Tr. 18 (emphasis added); *see also* Tr. 385); (5) a diagnostic study dated May 2003 showing that she "had an estimated left ventricular ejection fraction of 50 to 55%, while the mechanical mitral valve prosthesis appeared to be functioning normally" (Tr. 18; *see also* Tr. 368); (6) medical records dated January 3, 2005 showing that Michlitsch was briefly hospitalized and released with a prescription of Stenolol after she "developed some left-sided chest discomfort, followed by increasing *fatigue*" but that the problem was not "cardiac related" (Tr. 18 (emphasis added); *see also* Tr. 310-12, 363); (7) evidence that Michlitsch returned to work in 2001 and 2003 and was formally released by Dr. Anderson to work with no restrictions as of January 7, 2005 (Tr. 18, 359-60, 385); (8) an echocardiogram performed in September 2007 after Michlitsch reported recent *heart palpitations* that showed mild mitral regurgitation with an ejection fraction of 45%

---

Light Work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

and resulted in Rim Bannout, M.D. ("Dr. Bannout") recommending that Michlitsch continue to take (but not increase) Toprol and her anticoagulation medication[4] (Tr. 18, 412-15); (9) evidence that in October 2007 Michlitsch was prescribed Metaformin after her glucose level was high (Tr. 18); (10) evidence showing that Michlitsch's diabetes had been kept under "excellent control" through the use of oral medication (Tr. 18-19); (11) a July 2009 examination with Hanna Abu-Nassar, M.D. ("Dr. Nassar") that revealed "mild cardiomegaly while the electrocardiogram showed atrial fibrillation" (Tr. 19; *see also* Tr. 665-71).

The ALJ further stated:

> None of the claimant's treating physicians have rendered an opinion concerning her ability to work. A medical doctor under contract with the state agency to review claims for disability examined the claimant's medical evidence as then constituted, and opined that the claimant retained the functional capacity for light work.
>
> . . . .
>
> The claimant portrayed herself as being incapacitated by back and leg pain. However, the medical record simply does not show that she has an impairment that would cause the level of pain alleged. The claimant has mild degenerative disc disease, but no evidence of nerve root stenosis. The nerve conduction study was abnormal, but it did not reveal abnormalities that would reasonably account for the claimant's alleged pain. I also did not find within the medical record any evidence to corroborate the claimant's allegation of adverse side effects to her medication; she certainly did not report it to any doctor.

(Tr. 19.)

As to Michlitsch's argument that the ALJ failed to consider her chronic cardiac palpitations and fatigue when making his RFC, the record indicates that the ALJ adequately considered both. As set forth above, in his analysis the ALJ acknowledged on multiple

---

[4] Dr. Bannout evaluated Michlitsch in September 2007. (Tr. 412-415.) He noted that Michlitsch had recently added Toprol to help with palpitations but that it was making her feel fatigued. (Tr. 412.) He did not increase her Toprol dosage since she was having significant fatigue. (Tr. 413.) The ALJ did not specifically mention this information in his decision; however, the Court infers he was aware of such information as he did specifically mention other information from Dr. Bannout's September 2007 evaluation. (*See* Tr. 18.)

occasions that Michlitsch suffered from cardiac palpitations (or irregular heart beat) and experienced fatigue. (Tr. 18-19.)  In addition, Michlitsch offers no evidence that the cardiac palpitations or fatigue resulted in additional work-related limitations beyond the limitations already set forth in the RFC. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se.")  Furthermore, Michlitsch has failed to identify any evidence that indicates that any such impairments limited her ability to perform basic work activities, and there is no objective medical evidence that any decreased functioning was attributable to such impairments. *Id.* at 165-66. *See, e.g., Campos v. Astrue*, No. 5:08-CV-115-C, 2009 WL 1586194, at *3-4 (N.D. Tex. June 8, 2009); *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *5 (N.D. Tex. Dec. 5, 2008) ("Obesity is not a per se disabling impairment and Plaintiff has offered no medical evidence that her obesity actually results in these limitations or any further limitations beyond the sedentary work level found by the ALJ.") *See also Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (stating that the court will not vacate a judgment unless the substantial rights of a party have been affected).

In this case, it is clear that the ALJ was aware of all of Michlitsch's impairments. Furthermore, the ALJ went through a detailed review of the medical and other evidence in the record in assessing Michlitsch's RFC.  He properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  Consequently, remand is not required.

As to Michlitsch's argument that the ALJ failed to consider the side effects of her medication when making his RFC determination, the Court notes that, pursuant to 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), the ALJ is required as part of the disability determination to consider "the type, dosage, effectiveness, and side effects of any medication" a claimant takes

or has taken to alleviate pain or other symptoms. *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *see* SSR 96-7p. Thus, an ALJ commits error by failing to evaluate side effects or symptoms allegedly caused by medication and their impact on the claimant's RFC. *See Brown v. Barnhart*, 285 F. Supp. 2d 919, 935 (S.D. Tex. 2003); *Bassett v. Astrue*, No. 4:09-CV-142-A, 2010 WL 2891149, at *13 (N.D. Tex. June 25, 2010). "Since the error involves a violation of a regulation, reversal and remand is required only if the error is not harmless." *Skidis v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-2181-N, 2009 WL 3199232, at *11 (N.D. Tex. Oct. 2, 2009). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent error." *Id.*; *see Zeno v. Barnhart*, No. 1:03-CV-649, 2005 WL 588223, at *13 (E.D. Tex. Feb. 4, 2005) ("Hence, plaintiff has not in any event satisfied her burden to demonstrate prejudice arising from the alleged error, and the court—in harmless error analysis— cannot fairly conclude that the result could have changed had [the] ALJ . . . engaged in a more explicit analysis of medication side effects."). *See also Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006).

In this case, contrary to Michlitsch's arguments, the ALJ did discuss the side effects of dizziness or drowsiness related to Michlitsch's taking of medication.[5] However, in considering such side effects, the ALJ erroneously stated, "I also did not find within the medical record any evidence to corroborate the claimant's allegation of adverse side effects to her medication; she

---

[5] The Court notes that, in her brief, Michlitsch also states:

> State agency physicians considered the evidence and determined that Plaintiff should avoid even moderate exposure to hazards. (Tr. 401, 681.) Such limitation may result from the anticoagulant medication which Plaintiff has taken for years and continues to take. The ALJ, however, never considered such limitation, nor did he determine its significance with regard to the alternative occupations upon which he relied.

(Pl.'s Br. at 10.) The Court will not consider such arguments as Michlitsch has pointed to absolutely no evidence, beyond her mere speculation in her brief, that indicates that a side effect of her anticoagulant medication is that Michlitsch should avoid moderate exposure to hazards.

certainly did not report it to any doctor." (Tr. 20.) It is unclear why the ALJ made this statement after he had, earlier in his decision, specifically considered Michlitsch's fatigue in assessing Michlitsch's RFC determination. However, any error by the ALJ in analyzing the side effect of fatigue from taking Toprol is harmless as all *objective medical evidence of fatigue as a side effect of Michlitsch's medication* referenced by Michlitsch pre-dated her amended disability onset date of May 11, 2008 and is not particularly relevant for that reason.[6] *See, e.g., Gallegos v. Astrue*, No. 3:12-CV-0377-O-BK, 2012 WL 6522746, at *6 (N.D. Tex. Aug. 1, 2012); *Villalpando v. Astrue*, No. A-07-CV-109 AWA, 2008 WL 375267, at *3 (W.D. Tex. Feb. 11, 2008); *Hickman v. Astrue*, No. H-08-1194, 2009 WL 3190471, at *13 (S.D. Tex. Sept. 29, 2009) ("During the relevant time period . . . there are no reports that [the claimant] complained of disabling side effects from medication.") Moreover, Michlitsch fails to point to any evidence in the record that shows that any decreased functioning was attributable to such side effects. *See Bassett*, 2010 WL 2891149, at *14 ("Because [claimant] fails to point to any specific evidence in the record that shows that any decreased functioning was attributable to such side effects, the Court concludes that any error committed by the ALJ in failing to take into consideration such side

---

[6] Michlitsch, in her brief, points to several instances in the record where fatigue is noted: (1) in the July 22, 2009 examination, Dr. Abu-Nassar mentions that "*[i]n 2006* [Michlitsch] started complaining of easy fatigability" (Tr. 666 (emphasis added)); (2) an April 16, 2008 examination in which Michlitsch reported that she had "generalized fatigue" (Tr. 500). (Pl.'s Br. at 3.) However, all references pre-date Michlitsch's amended onset date of May 11, 2008. The only evidence of fatigue that Michlitsch points to that post-dates May 11, 2008 is her testimony at the first hearing before the ALJ on November 12, 2008. At this hearing, Michlitsch testified that she was taking, *inter alia*, Toprol and that it made her very tired and sleepy. (Tr. 40-41.) *Based upon the specific facts in this case*, including the fact that the ALJ had considered her fatigue (albeit not as a side effect to her medication), the Court concludes that Michlitsch's testimony, without more, is not enough to require a remand in this case.

The Court is aware that in *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999), the Fifth Circuit Court of Appeals found that the Commissioner had erred in stating that Crowley suffered from no adverse side effects due to prescribed medications when the only evidence in the record was that the claimant had testified that he did suffer from side effects from his medication. *See also W.A.D. v. Comm'r*, No. 11-CV-0572, 2012 WL 4464610, at *3 fn.1 (W.D. La. June 21, 2012) (noting that in *Crowley v. Apfel*, that the court ordered a remand even though there was "no mention of objective evidence to support the claimant's testimony about side effects or any requirement of the same.") The instant case is distinguishable, however, because in this case the ALJ did recognize that Michlitsch suffered from fatigue (albeit not in the context as a side effect of taking the Toprol) and ultimately determined that the fatigue did not impact Michlitsch's ability to work as there was no evidence that it affected her ability to work at any time on or after May 11, 2008.

effects when formulating [claimant's] RFC is harmless."); *see, e.g., Hickman*, 2009 WL 3190471, at *13. Because any error regarding the ALJ's assessment of the side effects of Michlitsch's medication is harmless, remand is not required.

As to Michlitsch's final argument that the ALJ erred in failing "to consider [Michlitsch's] ability to sustain work-related activity on a regular and continuing basis" (Pl.'s Br. at 10), the Court notes that such argument appears to be based on a line of cases involving the United States Court of Appeals for the Fifth Circuit's holding in *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986). In that case, the Fifth Circuit held that an ALJ must, in certain situations, make a finding regarding the claimant's ability to maintain a job and such finding should be supported by substantial evidence. *See also Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003); *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002).

In this case, there is no evidence that Michlitsch suffers from an impairment that involves intermittently recurring symptoms that are of such sufficient frequency or severity to prevent her from holding a job for significant periods of time as required by *Singletary, supra*, and its progeny. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005) (stating that allegations that an impairment causes "good days and bad days" do not by themselves require an explicit finding regarding the claimant's ability to maintain employment). Furthermore, the ALJ must make such a specific finding that a claimant can maintain employment only in cases where there is "evidence that a claimant's ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Because

13

Michlitsch has pointed to no such evidence, the Court concludes that the ALJ did not err and remand is not required.

Because the Court concludes, as set forth above, that the ALJ did not err in formulating Michlitsch's RFC, the Court does not need to examine the Plaintiff's contentions that the ALJ's analysis at Step Five is erroneous because it was based on an incorrect RFC analysis.

### RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 2, 2013** to serve and file written objections to the United States Magistrate Judge's proposed

14

findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 18, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv